TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARK AVEIS (Cal. Bar No. 107881)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4477
     Facsimile: (213) 894-6269
     E-mail:   mark.aveis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-31-GW |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT PAUL RICHARD RANDALL |
| v. | |
| PAUL RICHARD RANDALL, | |
| Defendant. | |

     1.   Subject to approval by the Tax Division of the United
States Department of Justice, this constitutes the plea agreement
between defendant PAUL RICHARD RANDALL ("defendant") and the United
States Attorney's Office for the Central District of California (the
"USAO") in the above-captioned case.  This agreement is limited to
the USAO and cannot bind any other federal, state, local, or foreign
prosecuting, enforcement, administrative, or regulatory authorities.

                        DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to Count Three of the

indictment in *United States v. Paul Richard Randall,* CR 20-31-GW, which charges defendant with tax evasion, in violation of 26 U.S.C. § 7201.

    b.   Not contest facts agreed to in this agreement.

    c.   Abide by all agreements regarding sentencing contained in this agreement.

    d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

    e.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by applicable General Orders of this Court or another order, rule, or statute. Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

    i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

    ii.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal

Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

iii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

iv.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

v.   Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

i.   Make restitution at or before the time of sentencing unless at a different time as approved by the Court, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.  With respect to the restitution due, defendant further agrees:

i.   To pay restitution to the Internal Revenue Service ("IRS"), pursuant to 18 U.S.C. § 3663(a)(3) as, determined by

the Court.  The parties agree that the amount of restitution, based upon the total tax due and owing for the calendar years 2015 through 2017, inclusive, is at least approximately $647,418.  The government reserves the right to argue, and defendant reserves the right to oppose, that restitution exceeds that amount.  Defendant agrees to pay Title 26 interest on whatever amount of restitution the Court determines; interest runs from the last date prescribed for payment of the relevant tax liability until the IRS receives payment in full.

ii.  That all restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States.  If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.  The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4).  Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C).  Neither the existence of a restitution payment schedule nor defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

iii.  Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered.  Defendant authorizes release of information to the IRS for purposes of making the civil tax and

restitution-based assessments.  Defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

iv.  If full payment cannot be made immediately, defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the United States Probation Office.  Defendant also agrees to provide the above-described information to the Probation Office.

j.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

k.  File, prior to the time of sentencing, amended federal income tax returns for the calendar years 2015 through 2017, inclusive, correctly reporting unreported income for each such year and, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with all requested information regarding the years covered by such returns.

l.  Pay as directed all additional taxes, penalties, and interest assessed by the Internal Revenue Service on the basis of the returns for the years stated above, including all additional taxes, penalties, and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational errors. Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.  Nothing in this agreement forecloses or limits the

1    ability of the Internal Revenue Service to examine and make

2    adjustments to defendant's returns after they are filed.

3            m.   Not file, after filing any amended returns, any claim

4    for refund of taxes, penalties, or interest for amounts attributable

5    to the amended returns filed in connection with this plea agreement.

6            n.   Pay any fraud penalty imposed by the Internal Revenue

7    Code, 26 U.S.C. § 6663, on the understatements of defendant's tax

8    liability for any and all years for which such penalty may be

9    imposed.

10           o.   Give up any and all objections that could be asserted

11   to the Examination Division of the Internal Revenue Service receiving

12   materials or information obtained during the criminal investigation

13   of this matter, including materials and information obtained through

14   grand jury subpoenas.

15           p.   Agree to and not oppose the imposition of the

16   following conditions of probation or supervised release:

17               i.   Defendant shall not be associated in any way

18   with, or employed by, any health care related business, including but

19   not limited to a pharmacy, where defendant may receive any

20   compensation, in any form, for the referral of business, including

21   for the referral of prescriptions, for any type of health care in

22   exchange for any form of compensation; and

23               ii.   As directed by the Probation Officer, defendant

24   shall provide the Probation Officer with records pertaining to the

25   operation of any business owned or controlled, in whole or in part,

26   by defendant.

27                        THE USAO'S OBLIGATIONS

28       3.   The USAO agrees to:

                                    6

1          a.    Not contest facts agreed to in this agreement.

2          b.    Abide by all agreements regarding sentencing contained

3     in this agreement.

4          c.    At the time of sentencing, provided that defendant

5     demonstrates an acceptance of responsibility for the offenses up to

6     and including the time of sentencing, recommend a two-level reduction

7     in the applicable Sentencing Guidelines offense level, pursuant to

8     U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

9     additional one-level reduction if available under that section.

10         d.    Not further criminally prosecute defendant for

11    violations of Title 18, United States Code, Sections 1341, 1343,

12    1344, 1347, 1349, or any other federal charge, other than the charge

13    to which defendant has agreed to plead guilty, arising out of

14    defendant's conduct described in the agreed-to factual basis set

15    forth in Exhibit A.  Defendant understands that the USAO is free to

16    criminally prosecute defendant for any other unlawful past conduct,

17    or any unlawful conduct that occurs after the date of this agreement.

18    Defendant agrees that at the time of sentencing the Court may

19    consider the uncharged conduct in determining the applicable

20    Sentencing Guidelines range, the propriety and extent of any

21    departure from that range, and the sentence to be imposed after

22    consideration of the Sentencing Guidelines and all other relevant

23    factors under 18 U.S.C. § 3553(a).

24                         <u>NATURE OF THE OFFENSE</u>

25         4.    Defendant understands that for defendant to be guilty of

26    the crime charged in count three of the indictment in this case, that

27    is, tax evasion, in violation of 26 United States Code, Section 7201,

28    the following must be true: (1) defendant owed federal income tax for

the calendar year 2017; (2) defendant knew he owed federal income taxes for the calendar year 2017; (3) defendant made an affirmative attempt to evade or defeat such additional tax; and (4) in attempting to evade or defeat such additional tax, the defendant acted willfully. In order to prove that defendant acted "willfully," the government must prove beyond a reasonable doubt that defendant knew federal tax law imposed a duty on him, and defendant intentionally and voluntarily violated that duty.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7201, is: five years imprisonment; a 3-year period of supervised release; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands and agrees that the Court may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

10.    Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts in Exhibit A attached hereto and agree that this statement of facts is sufficient to

support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

11.     Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.     Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base offense level:     20   [U.S.S.G. §§ 2T1.1(a)(1),
                                2T4.1(H)]

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(c) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as

discussed below.  The government reserves the right to argue, and defendant reserves the right to oppose that: (1) the base offense level should be up to four levels greater than level 20 based upon what the government believes to be the total amount of tax due and owing for the offense of conviction and for relevant conduct, pursuant to USSG § 2T4.1(I) or (J); (2) defendant committed the offense of conviction while on pretrial release, resulting in an additional three levels pursuant to U.S.S.G. § 3C1.3; and that (3) defendant failed to report income from criminal activity, resulting in an additional two levels pursuant to U.S.S.G. § 2T1.1(b)(1). Subject to paragraph 26 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

13.    Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.    Defendant reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines

based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

WAIVER OF APPEAL OF CONVICTION

2      16.   Defendant understands that, with the exception of an
3 appeal based on a claim that defendant's guilty plea was involuntary,
4 by pleading guilty defendant is waiving and giving up any right to
5 appeal defendant's conviction on the offense to which defendant is
6 pleading guilty.  Defendant understands that this waiver includes,
7 but is not limited to, arguments that the statute to which defendant
8 is pleading guilty is unconstitutional, and any and all claims that
9 the statement of facts provided herein is insufficient to support
10 defendant's plea of guilty.

11

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12      17.   Defendant agrees that, provided the Court imposes a term
13 of imprisonment within the statutory maximum for the counts of
14 conviction, defendant gives up the right to appeal all of the
15 following: (a) the procedures and calculations used to determine and
16 impose any portion of the sentence; (b) the term of imprisonment
17 imposed by the Court, provided that the Court imposes a term of
18 imprisonment within the applicable Sentencing Guidelines range;
19 (c) the fine imposed by the Court, provided it is within the
20 statutory maximum; (d) to the extent permitted by law, the
21 constitutionality or legality of defendant's sentence, provided it is
22 within the statutory maximum; (e) the amount and terms of any
23 restitution order; (f) the term of probation or supervised release
24 imposed by the Court, provided it is within the statutory maximum;
25 and (g) any of the following conditions of probation or supervised
26 release imposed by the Court: the conditions set forth in Second
27 Amended General Order 20-04 of this Court; the drug testing
28 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the

13

alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant as provided herein.

18.   The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum, the USAO gives up its right to appeal any portion of the sentence or the amount of restitution ordered.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19.   Defendant agrees that if, after entering guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then: (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

20.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

14

1

<u>BREACH OF AGREEMENT</u>

2      23.   Defendant agrees that if defendant, at any time after the
3  effective date of this agreement, knowingly violates or fails to
4  perform any of defendant's obligations under this agreement ("a
5  breach"), the USAO may declare this agreement breached.  For example,
6  if defendant knowingly, in an interview, before a grand jury, or at
7  trial, falsely accuses another person of criminal conduct or falsely
8  minimizes defendant's own role, or the role of another, in criminal
9  conduct, defendant will have breached this agreement.  All of
10 defendant's obligations are material, a single breach of this
11 agreement is sufficient for the USAO to declare a breach, and
12 defendant shall not be deemed to have cured a breach without the
13 express agreement of the USAO in writing.  If the USAO declares this
14 agreement breached, and the Court finds such a breach to have
15 occurred, then (a) if defendant has previously entered a guilty plea
16 pursuant to this agreement, defendant will not be able to withdraw
17 the guilty plea, and (b) the USAO will be relieved of all its
18 obligations under this agreement.

19     24.   Following the Court's finding of a knowing breach of this
20 agreement by defendant, should the USAO choose to pursue any charge
21 that was either dismissed or not filed as a result of this agreement,
22 then:

23          a.   Defendant agrees that any applicable statute of
24 limitations is tolled between the date of defendant's signing of this
25 agreement and the filing commencing any such action.

26          b.   Defendant waives and gives up all defenses based on
27 the statute of limitations, any claim of pre-indictment delay, or any
28 speedy trial claim with respect to any such action, except to the

1  extent that such defenses existed as of the date of defendant's
2  signing this agreement.

3          c.   Defendant agrees that: (i) any statements made by
4  defendant, under oath, at the guilty plea hearing (if such a hearing
5  occurred prior to the breach); (ii) the agreed-to factual basis
6  statement in this agreement; and (iii) any evidence derived from such
7  statements, shall be admissible against defendant in any such action
8  against defendant, and defendant waives and gives up any claim under
9  the United States Constitution, any statute, Rule 410 of the Federal
10 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
11 Procedure, or any other federal rule, that the statements or any
12 evidence derived from the statements should be suppressed or are
13 inadmissible.

14          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
15                          OFFICE NOT PARTIES

16     25.   Defendant understands that the Court and the United States
17 Probation and Pretrial Services Office are not parties to this
18 agreement and need not accept any of the USAO's sentencing
19 recommendations or the parties' agreements to facts or sentencing
20 factors.

21     26.   Defendant understands that both defendant and the USAO are
22 free to: (a) supplement the facts by supplying relevant information
23 to the United States Probation and Pretrial Services Office and the
24 Court, (b) correct any and all factual misstatements relating to the
25 Court's Sentencing Guidelines calculations and determination of
26 sentence, and (c) argue on appeal and collateral review that the
27 Court's Sentencing Guidelines calculations and the sentence it
28 chooses to impose are not error, although each party agrees to

1    maintain its view that the calculations in paragraph 12 are

2    consistent with the facts of this case.  While this paragraph permits

3    both the USAO and defendant to submit full and complete factual

4    information to the United States Probation and Pretrial Services

5    Office and the Court, even if that factual information may be viewed

6    as inconsistent with the facts agreed to in this agreement, this

7    paragraph does not affect defendant's and the USAO's obligations not

8    to contest the facts agreed to in this agreement.

9         27.   Defendant understands that even if the Court ignores any

10   sentencing recommendation, finds facts or reaches conclusions

11   different from those agreed to, and/or imposes any sentence up to the

12   maximum established by statute, defendant cannot, for that reason,

13   withdraw defendant's guilty pleas, and defendant will remain bound to

14   fulfill all defendant's obligations under this agreement.  Defendant

15   understands that no one -- not the prosecutor, defendant's attorney,

16   or the Court -- can make a binding prediction or promise regarding

17   the sentence defendant will receive, except that it will be within

18   the statutory maximum.

19                          NO ADDITIONAL AGREEMENTS

20        28.   Defendant understands that, except as set forth herein,

21   there are no promises, understandings, or agreements between the USAO

22   and defendant or defendant's attorney, and that no additional

23   promise, understanding, or agreement may be entered into unless in a

24   writing signed by all parties or on the record in court.

25            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

26        29.   The parties agree that this agreement will be considered

27   part of the record of defendant's guilty plea hearing as if the

28   ///

                                    17

entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

*Mark Aveis*                                    March 30, 2022
_____         _____
MARK AVEIS                                       Date
Assistant United States Attorney


_____         _____
PAUL RICHARD RANDALL                     3/30/22
Defendant                                        Date


_____         _____
H. DEAN STEWARD                              3/30/22
Attorney for Defendant                       Date
PAUL RICHARD RANDALL

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          3 | 30 | 22
PAUL RICHARD RANDALL               Date
Defendant

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2    I am PAUL RICHARD RANDALL's attorney.  I have carefully and

3  thoroughly discussed every part of this agreement with my client.

4  Further, I have fully advised my client of his rights, of possible

5  pretrial motions that might be filed, of possible defenses that might

6  be asserted either prior to or at trial, of the sentencing factors

7  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17  H. DEAN STEWARD                         Date  3/30/22
   Attorney for Defendant
18  PAUL RICHARD RANDALL

19

20

21

22

23

24

25

26

27

28

1    <u>EXHIBIT A (Factual Basis)</u>

2    At times relevant to the Indictment in this case:

3    Defendant was a resident of Chino Hills, in Orange County, in

4 the Central District of California.

5    *Non-filing of Tax Returns*

6    Defendant admits that defendant was required to file, and did

7 not timely file, federal income tax returns for the calendar years

8 2015 through 2017, inclusive.  Defendant admits that defendant was

9 required to file federal income tax returns for the years stated

10 above because defendant had substantial income and substantial tax

11 due and owing as described below.

12    *Unreported Income*

13    During at the least the calendar years 2015 through 2017,

14 inclusive, in Los Angeles and Orange Counties, California, within the

15 Central District of California, and elsewhere, defendant operated a

16 prescription referral business called Pharma Pro Solutions LLC

17 ("Pharma Pro").  Pharma Pro had a half-dozen or so "marketers" who

18 staffed booths at school job fairs, businesses, or trade shows to

19 solicit university students and employees with health insurance to

20 seek prescriptions for expensive and medically unnecessary compounded

21 drugs.  As part of a "co-marketing" plan, defendant agreed with

22 health care providers, including M.R., to refer patients to providers

23 in exchange for the providers' writing prescriptions for such

24 medications.

25    In late 2015, defendant told Anthony Peraino and Vartan

26 Tabakian, the owners of Studio Pharmacy in Studio City, California

27 ("Studio"), that defendant was "looking for a pharmacy to call home"

28 and that he was angry with several pharmacies to whom he had referred

prescriptions because the operators of those pharmacies had failed to pay defendant for the referrals.  Based upon defendant's pitch, Peraino and Tabakian agreed that Studio would pay defendant 50% of the net reimbursements on claims that Studio would submit to insurers based on prescriptions that defendant and his Pharm Pro reps would refer.

In order to evade his federal income tax obligations, defendant, among other things,

1)   signed IRS Forms that identified defendant as an employee of Studio when, in fact, as defendant well knew, defendant was not an employee of Studio.

2)   used the Social Security Number of another individual, without that individual's knowledge or permission, on IRS Forms relating to Studio, so that IRS and other creditors would have difficulty tracing income that defendant expected to receive from Studio.

3)   directed the owners of Studio to pay compensation to defendant for prescription referrals in the form of checks payable to defendant's nominees, including one of his lawyers who had represented defendant in connection with his conviction in another matter, *United States v. Randall,* SA CR 12-23-JLS ("the Pacific Hospital Case").  Defendant then fraudulently, without the knowledge or permission of at least lawyer B.H., endorsed and caused the endorsements of B.H. on such checks, knowing that banks would rely on and believe the endorsements were legitimate, and then paid third parties to negotiate such checks and pay over the net proceeds of such checks to defendant.  Such checks included at least the following:

a.   Check no. 1460, issued by Studio on JPMorgan Chase account ending in 1083 (the "Studio Account") on or about May 5, 2016, in the amount of $2,500, and payable to B.H.;

b.   Check no. 1469, issued by Studio on the Studio Account on or about May 11, 2016, in the amount of $2,500 and payable to B.H.;

c.   Check no. 1607, issued by Studio on the Studio Account on or about July 18, 2016, in the amount of $2,000 and payable to J.R.;

4)   directed the owners of Studio to pay compensation to defendant for prescription referrals in the form of checks payable to defendant's personal creditors with whom defendant had arranged to pay over the proceeds of such checks to defendant.  Such checks included at least the following:

a.   Check no. 1905, issued by Studio on the Studio Account on or about January 18, 2017, in the amount of $5,000 and payable to T.G.

b.   Check no. 2051, issued by Studio on the Studio Account on or about May 18, 2017, in the amount of $10,000 and payable to J.R.

5)   directed the owners of Studio to pay compensation to defendant for prescription referrals in the form of checks payable to R.D., who purported to operate an advertising firm to promote Studio's business.  In fact, defendant did not intend that R.D. perform any legitimate advertising for Studio.  Instead, defendant had agreed with R.D. that R.D. would cash such checks and forward the net proceeds to defendant.

*Tax Due and Owing*

Defendant agrees and stipulates that defendant had unreported taxable income and tax due and owing for the calendar years 2015 through 2017, inclusive, as follows:

| Year | Taxable Income | Tax Due and Owing |
|------|---------------|-------------------|
| 2015 | $148,778 | $37,213 |
| 2016 | $715,205 | $239,677 |
| 2017 | $995,587 | $370,528 |
| Total | $1,859,570 | $647,418 |